Hadrian and wife, Respondents, vs. The Milwaukee Electric Railway & Transport Company, Appellant.

*December 2, 1941—January 13, 1942.*
*September 18—October 13, 1942.*

124

For the appellant there was a brief by *Shaw, Muskat &
Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondents there was a brief by *Harry V. Meissner,*
and oral argument by *Mr. Meissner* and *Mr. Robert L. Piper,*
both of Milwaukee.

The following opinion was filed January 13, 1942:

FOWLER, J.   As appears from the foregoing statement, the plaintiff wife recovered judgment upon a verdict of a jury assessing her damages at $12,000 for a broken leg caused by negligence of the defendant in so operating a two-car street-car train as to strike her with the outswing of the rear of the train when rounding a turn, and her husband recovered judgment for $2,365 as his damages found to have been so caused. The defendant appeals from the judgment and claims as error, in substance, that (a) as matter of law the defendant was not negligent; (b) as matter of law the plaintiff was contributorily negligent; and (c) her such negligence was as great or greater than defendant's if defendant was negligent at all; and (d) the damages were excessive.   Appellant also claims (e) that if the action is not dismissed a new trial should be ordered for errors in admission of evidence.

(a) Appellant's first contention is that findings (1) and (2) of the jury stated preceding the opinion, that the plaintiff was struck while on the elevated portion of a safety zone, and while within the zone, are contrary to the physical facts. The physical fact relied on is that blood spots on the pavement mark the place where the plaintiff fell and that these spots were entirely outside the safety zone, 2 feet south of the south end of the painted yellow strip designating its boundary.

It is beyond dispute or reasonable controversy that the spots referred to were blood spots, that the blood came from a comminuted compound fracture of the plaintiff's bleeding leg, that they were where plaintiff fell, and that they were on the crosswalk at least two feet south of the end of the triangle forming the south part of the safety zone.

It being established that the blood spots were located as stated, the finding of the jury that the plaintiff was on the raised part of the zone is contrary to that established fact. The only support of this finding of the jury is the testimony of the plaintiff that when struck she was standing at the north end of the ramp leading from the elevated portion of the safety

zone down to the surface of the street. It is uncontradicted that the ramp extends 5½ feet north and south, and that from its south end the marked zone extends in the shape of an irregular triangle 15.8 feet further south to the apex of the triangle. While it is true that the plaintiff might not have been standing at the precise place of the blood spots, and may have fallen to the ground a foot or two from the point where she was struck, it is incredible that she was thrown by the blow 22.8 feet from the north edge of the ramp to the place of the blood spots on the street. The train in rounding the turn did not reach a speed in excess of five miles per hour.

One witness, a Miss Mills, testified that she thought that when the plaintiff fell she was then within the marked safety zone but she did not see the plaintiff when she was struck. She saw her fall to the pavement as the rear of the train was rounding the curve and "would say" that she was then within the safety zone.

A boy named Miller testified that plaintiff was on the ramp when struck, and says she lay on the pavement 2 or 3 feet off and west of the island after falling; that when she fell she landed in the street; and that she fell in a slumped position. He is badly impeached by a written statement signed by him, which he attempts to impeach by denying having made important portions of it. But taking his testimony at its face, that the plaintiff was struck while on the ramp, it is contrary to the physical fact of the location of the blood spots, as she could not have been thrown from any place on the ramp to the place of the blood spots, which was at least 17.8 feet south of the south end of the ramp.

(b) The plaintiff being neither on the elevated part nor the ramp of the zone, this leaves for consideration whether the jury might not still have found on the testimony of Miss Mills that she was struck while within the zone. But this too in view of the proved extent of the outswing of the rear car is contrary to the physical fact of the location of the blood spot.

The outswing of the car in passing out of the zone reaches the inside of the yellow strip marking its limits 10 feet north of the south end of the zone, 12 feet from the blood spots. The plaintiff was not dragged. There is no testimony that she was thrown at all. She just slumped down in a sitting position. If we take the outside of the yellow strip as marking the zone limit, the plaintiff still cannot have been within the zone when struck. The point where the outswing of the car reaches the outer edge of the strip is 6 feet north of the south end of the zone, 8 feet from the blood spots. The plaintiff could not have been thrown that distance. That she was thrown 8 feet and came to rest in a sitting position is entirely beyond the reach of reason.

The plaintiff not being inside the safety zone when struck there is no finding whatever of negligence of the defendant unless finding (5), stated in the preceding statement of facts— "was the conductor negligent in failing to signal the motorman to stop the car?"—be construed as covering the striking of the plaintiff outside the zone. Every other question of the verdict is postulated on the plaintiff's being struck when within the zone. But assuming the question be so construed the case falls within the rule of *Zalewski v. Milwaukee E. R. & L. Co.* 219 Wis. 541, 263 N. W. 577. To the same effect are *Wheeler v. Des Moines City R. Co.* 205 Iowa, 439, 215 N. W. 950, 55 A. L .R. 473; *Louisville Ry. Co. v. Ray* (Ky.), 124 S. W. 313; *Creenan v. International R. Co.* 139 App. Div. 863, 124 N. Y. Supp. 360; *Noonan v. Boston Elevated R. Co.* 263 Mass. 305, 160 N. E. 811. The defendant's duty under the circumstances was to give the alighting passenger reasonable opportunity to reach a position of safety before starting the train. The train remained standing a minute or a minute and a half. Just as it stopped, an interurban from the west stopped on Michigan street on the west side of Third street. The motorman before starting waited to see if passengers alighting therefrom wished to take his train. The plaintiff

by her own testimony walked from where she alighted, about 8 feet south of the north end of the elevated part of the island, to where she fell. This was at least as far as the south end of the safety zone, 45 feet, and she was standing still when she fell. The plaintiff therefore had ample opportunity to get into a position of safety outside the zone.

(e) As the above requires dismissal of the case, there is no occasion to discuss appellant's claims (c) and (d) above stated. Nor would there be occasion to discuss claim (e) but for the fact that we consider the errors here assigned gross and highly prejudicial, and that the findings of the jury are so clearly contrary to any rational evaluation of the admissible evidence that they were quite likely induced by these errors. The errors here involved were receipt in evidence of a contrivance intended to illustrate the extent of the invasion of the safety zone by the rear of the train in rounding the turn and permitting the plaintiff to convert the court into a "movie" picture theater to show to the jury a moving picture of the rear of the train rounding the turn.

The court received in evidence a square of beaverboard practically 3 by 3 feet in dimension in which a narrow slit was cut to represent the center of the southbound car track in making the turn. In this slit a block of wood 2 inches wide and practically 12 inches long slides on pivots, one at the front of the block and the other 3 inches from the back, to represent the swing of the rear car of the train as it makes the turn. Lines are drawn on the board grossly misrepresenting the contour of the safety zone south of the ramp. Sliding the model car along the groove so throws the outside back corner of the model into the safety zone as grossly to exaggerate the extent of the invasion. At the south end of the zone as represented on the board the corner of the model extends half way across the zone, which is represented on the board as the same width as the elevated part of the zone, whereas the outswing at this point does not reach the zone at all. It also shows a gross

exaggeration of the outswing on the ramp. The prejudicial effect of this exhibit is manifest. Its receipt would require a new trial of the case if it were not dismissed.

We were not favored on the argument with a presentation of a moving picture of the train rounding the curve so we cannot precisely evaluate the extent to which the exhibition to the jury may have enlightened or befuddled them. It doubtless impressed them with the fact that the train knocked over an object placed somewhere on the safety zone, but that fact was established by the undisputed testimony of the plaintiff's witness who placed the object and saw the object knocked over by the moving train. No need of a moving picture to show that fact. We are, however, enabled to judge as to the false impression made by the still photographs of the successive sections of the film as the train passed around the turn as to the extent of the invasion of the zone. Photographs do not represent distances; they misrepresent them. These stills grossly distort the extent and contour of the safety zone. The stills show the knocking down of an object placed somewhere on the zone near its inner edge but the impression of where on the zone or how near its edge the object was placed is deceptive. The stills of the moving train after it knocked down the object give an entirely false impression and grossly misrepresent the extent of the invasion of the zone. Doubtless the show was highly entertaining to the jury, but entertainment of the jury is no function of a trial. And why all this fuss to prove a fact susceptible of easy, exact, and undisputable demonstration by actual measurement? The court might well have required that the parties stipulate as to the extent of the invasion of the zone by the turning train. Here would have been an excellent opportunity for settling an undisputable fact in a pretrial conference such as sec. 269.65, Stats., contemplates. It is obvious that much time of the court and jury was consumed in misrepresenting under the guise of proving a simple, undisputable, and readily ascertainable fact.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with directions to dismiss the complaint.

FAIRCHILD, J., dissents.

The following memorandum was filed May 5, 1942:

PER CURIAM. After considering the briefs upon motion for rehearing the court is still of the view that the judgment below must be reversed. It is in doubt whether the record should be remanded for dismissal of the action or for a new trial. There should, of course, be a new trial if upon the record there are jury questions bearing upon liability. It appears to us that the critical question in this respect is whether the blood spots or bloodstains, separately or in connection with other facts bearing on the location of plaintiff at and after the accident, constitute physical facts contrary to plaintiff's testimony and destructive of it as a matter of law. We grant a rehearing in this case solely for the purpose of having this question reargued.

*On rehearing:*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondents there was a brief by *Harry V. Meissner,* and oral argument by *Mr. Meissner* and *Mr. Robert L. Piper,* both of Milwaukee.

The following opinion was filed October 13, 1942:

FRITZ, J. (*on rehearing*). Upon reconsideration, after reargument on a rehearing granted solely for the purpose stated in the *per curiam* opinion filed herein, it is our conclusion that the blood spots on the street pavement do not constitute physical facts, bearing on the location of plaintiff at the time she was struck by the car, that are so contrary to testimony,

upon which she relies in respect to such location, as to be destructive of that testimony, as a matter of law.

Defendant contends that because the evidence established, as physical facts, that the blood spots were $3\frac{1}{2}$ feet south of the south-end termination of the yellow safety-zone lines, $2\frac{1}{2}$ feet south of the north line of the crosswalk, and $6\frac{1}{2}$ feet west of the westerly rail of the southbound track, and also established that plaintiff was sitting there and bleeding profusely when she was picked up after she was injured, the place where she was standing when struck was not and could not have been in the safety zone or on the safety island; and that, consequently, the testimony upon which plaintiff relies cannot, as a matter of law, be held to admit of the jury's findings that she was injured by being struck by the rear-end swing of the car while she was standing in the safety zone and on part of the elevated safety island.

The determination of the vital issue as to where plaintiff was standing when she was struck is not conclusively controlled by or dependent upon the location of the spot where she fell on the pavement and bled after she was struck. On the contrary, if she was struck, as the jury found, by the rear-end swing of the car, that could have caused her to be shoved or thrown toward the west and south, and in that event the place at which she fell on the pavement and bled would be apt to be to the west and south of where she was standing when she was struck. Upon again carefully examining the evidence on that issue, it is our conclusion that in addition to plaintiff's testimony there is some testimony by the witnesses, Belle Mills and Waldemar E. Miller, that can be deemed to admit of the jury's findings that plaintiff was standing in the safety zone and on part of the safety island when she was struck by the car. And as it was within the province of the jury to determine the credibility, weight, and effect of that testimony, and the facts, as stated therein and as found by the jury's verdict, are not rendered physically

impossible by reason of the location of the blood spots and other facts established by evidence bearing on where plaintiff was standing when she was struck by the car, she is entitled to have the issues in that respect submitted to a jury on a re-trial.

*By the Court.*—The original mandate is modified in so far as the record is thereby remanded with directions to dismiss the complaint; and in lieu thereof the record is remanded with directions to grant a new trial.