FURRER, Appellant, v. MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Respondent.

*No. 25.  Argued October 28, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 537.)

562

For the appellant there was a brief by *Barrock & Barrock* and by *Kersten & McKinnon,* attorneys, and *Kenan J. Kersten* of counsel, all of Milwaukee, and oral argument by *Kenan J. Kersten.*

For the respondent there was a brief by *Kivett & Kasdorf,* attorneys, and *John M. Swietlik* of counsel, and oral argument by *Nonald J. Lewis,* all of Milwaukee.

WILKIE, J. The principal issue raised on this appeal is whether the trial court erred in refusing to submit a special verdict question and related instructions to the jury, both as requested by plaintiff-appellant.

The only question submitted to the jury (which the jury answered affirmatively) with regard to the possible negligence of the bus driver was as follows:

"Was the bus company operator negligent in not allowing the plaintiff to alight from the bus at a place which was safe and proper for that purpose under the circumstances then and there present?"

The court instructed the jury that:

". . . once it is shown that the common carrier has stopped its vehicle in such a position to allow a passenger

to alight in a safe and proper place, the relationship of passenger and carrier does not continue to exist. When a passenger alights under these circumstances such passenger is free from the direction and control of the carrier and any obligation of the carrier to the passenger at that time ceases to exist. After a common carrier discharges a passenger in a safe and proper place the passenger is personally responsible for his or her own safety and is no longer under the care of the carrier and no further duty exists upon the carrier's part."

Appellant argues that the trial court erred in refusing to include a specific question in the special verdict inquiring whether the bus company was negligent or not in "failing to provide the plaintiff with a reasonable opportunity to get free and clear from the bus." Appellant also argues that the quoted instruction erroneously limited the liability of the defendant and that further error was committed by the trial court when it refused to include a specific requested instruction that:

"The defendant bus company, as a common carrier, has a duty to give alighting passengers a reasonable opportunity to reach a position of safety before starting its bus. If you find that on the day in question, the bus driver of the defendant failed to give the plaintiff a reasonable opportunity, under the circumstances, to reach a position of safety before starting his bus, you must find the defendant negligent."

Appellant, we think correctly, relies primarily upon *Williams v. Milwaukee & Suburban Transport Corp.*,[1] in which we very recently reviewed the precise limits of a bus company's responsibility in situations like that presented here. In *Williams,* the plaintiff and her daughter alighted from the rear exit of a bus which was not aligned with the path leading through the snowbank to the sidewalk. The child exited just ahead of the plaintiff. After both exited, the plaintiff told the child to go through the path onto the sidewalk. When the child did

[1] (1967), 37 Wis. 2d 402, 155 N. W. 2d 100.

not respond, the mother bent down to lift the child over the snowbank. As she bent she heard the air brakes of the bus release. She called to warn the driver to wait but the bus started up, grazing her shoulder and throwing her to the road. The child was run over by the bus and died instantly.

The jury found that the place where the passengers alighted was reasonably safe, but found that the defendant bus company was negligent in moving the bus forward when it did. On appeal the judgment against the bus company was affirmed.

The defendant bus company argued on appeal that "there could be no negligence when the jury found that passengers had been discharged in a place of safety." [2] It was contended that "when that duty had been discharged, it was absolved from further responsibility and that, as a matter of law, the bus operator could not be negligent in thereafter moving the bus forward." [3] The defendant acknowledged that the law applicable to streetcars required not only that passengers be discharged in a place of safety, but that they "be given the opportunity to get beyond the zone of danger that might subsequently arise by reason of the movement of the streetcar." [4] However, defendant argued that this law was applicable only to streetcars because of the unusual hazard when that type of vehicle made a turn. This court rejected such a limited application of the rule. We stated that:

"Herein, it is clear that the place of alighting was safe only to the extent that it was a safe place to step from the bus, but it was a place of hazard and peril when the driver prematurely pulled away from the curb.

"We conclude that a driver of a motor bus not only has a duty to provide a place of safety to alight, but also to refrain from any conduct in the operation of his vehicle which would convert this place of safety into one of po-

[2] *Id.* at page 405.
[3] *Id.* at pages 405, 406.
[4] *Id.* at page 406.

tential hazard. In the instant case, while by stipulation it was agreed that no presumption would arise from the failure of the absent driver to testify, yet the jury could assume that he knew or should have known of the icy conditions of the street, the fact that the rear door was not in alignment with the path through the snow, and that the bus was close to the curb so that a woman encumbered with groceries and a small child could not move with freedom or without brushing or touching the bus. A driver, charged as he must be with this knowledge, who starts the bus in a forward motion with all these circumstances present could well have been held negligent by the jury. Such negligence was found by the jury, and the evidence supports the finding. *Where, as here, it was foreseeable that the motion of the bus would subject a discharged passenger to peril, it was negligence to proceed until such time that the passengers had a reasonable opportunity to reach a place of safety.*" (Emphasis added.) [5]

Another case in support of appellant's position is *O'Connor v. Larrabee.*[6] There the issue was whether the bus company was liable for a passenger's injuries when that passenger was struck by an automobile while crossing a street to transfer from one bus to another. The court denied recovery on the theory that the "relation of passenger and carrier does not continue merely because a transfer has been issued entitling the passenger to find transportation on another bus. Especially is this true when such passenger is free from direction and control of the carrier." [7]

However, the court went on to say that:

". . . The decision sustaining the demurrer is based on the general rule that *a person ceases to be a streetcar passenger as soon as he steps from the car into a public street and has a reasonable opportunity to leave the place at which he alights,* provided, of course, that he is set down at a place of the company's independent choosing

[5] *Id.* at pages 406, 407.

[6] (1954), 267 Wis. 185, 64 N. W. 2d 815.

[7] *Id.* at page 186.

which is reasonably safe and proper for that purpose." (Emphasis added.) [8]

Also, in *Hadrian v. Milwaukee Electric Railway & Transport Co.*,[9] a case dealing with the liability of a streetcar company to a passenger after that passenger had alighted from the train, the court stated that:

". . . The defendant's duty under the circumstances was to give the alighting passenger reasonable opportunity to reach a position of safety before starting the train." [10]

Thus it appears that the instructions of the trial court to the effect that the obligation of the carrier ceases "once it is shown that the common carrier has stopped its vehicle in such a position to allow a passenger to alight in a safe and proper place," erroneously limited the scope of the carrier's duty with regard to its passengers. It also appears, in light of the foregoing cases, that the trial court erred in not submitting a special verdict question similar to the one requested by plaintiff.

Respondent argues that on the facts established on the trial it was not foreseeable, as a matter of law, that the motion of the bus would subject alighting passengers to a risk of harm. Therefore, respondent contends, the trial court properly withheld from the jury the special verdict question concerning defendant's alleged failure "to give the plaintiff a reasonable opportunity, under the circumstances, to reach a position of safety before starting his bus, . . . ."

In its brief, respondent points out that during the time when plaintiff and Jean were passing the child out of the bus, the plaintiff never looked to see where her coat was. (It should be noted that the jury did not find plaintiff negligent with regard to this matter.) Also, respondent

---

[8] *Id.* at pages 186, 187.

[9] (1942), 241 Wis. 122, 1 N. W. 2d 755, 3 N. W. 2d 700, 5 N. W. 2d 765.

[10] *Id.* at page 128.

submits that there was no testimony that plaintiff had difficulty maneuvering her body after she alighted from the bus. It is also pointed out that the testimony is uncontradicted that the bus driver, from his position in the driver's seat, cannot see a person after he alights from the center exit, there being no mirror on that side of the bus.

Respondent attempts to distinguish the facts of the present case from *Williams, supra.* In the present case respondent contends that the plaintiff's "long flowing coat" became caught in the door of the bus because the plaintiff never bothered to observe that it was resting on the bottom step, while in the *Williams Case* the bus grazed the shoulder of the plaintiff as it started to move.

The respondent also argues that the coat in the door could not be a foreseeable event, because if it were, "no bus driver that discharges passengers via the side door could ever move a bus until he actually saw the passengers a considerable distance from the bus. It is only where it is foreseeable that the motion of the bus subjects a passenger to peril, that the duty exists not to proceed until the passenger has a reasonable opportunity to reach a place of safety." (It should be noted here that the element of foreseeability does not require that the particular injury was foreseeable, but only that some harm or injury was foreseeable.)

It is not enough that respondent establishes that there is credible evidence in the record which would sustain a jury finding that the event was not foreseeable. Rather, the burden on respondent is to establish that there is *no* credible evidence in the record from which a jury could reasonably conclude that the motion of the bus could subject alighting passengers to peril. Respondent has not met this obligation.

It is well established that the element of foreseeability is a question for the jury. Accordingly, the Wisconsin jury instructions as to negligence provide that:

". . . A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person or property of (*himself or*) another to an unreasonable risk of injury or damage." [11]

In his text, Prosser states:

"In any case where there might be reasonable difference of opinion as to foreseeability of a particular risk . . . the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way." [12]

The defendant's bus operator was charged with knowledge [13] of the presence in the bus of plaintiff and her two grandchildren, the snowbank, and the fact that the path through the snowbank was not aligned with the rear bus exit. These circumstances, along with other testimony in the record, seem clearly to present a jury question on the issue of negligence—which includes the element of foreseeability.

Other issues are raised by appellant, none of which have merit. Since there is to be a new trial we deem it advisable to settle these questions.

1. Did the trial court err in submitting a special verdict question concerning plaintiff's contributory negligence?

2. Did the trial court err in rejecting the testimony of William N. Martin concerning the normal operating procedures for shoveling the snow at the bus loading zone in question?

3. Did the trial court err in failing to instruct the jury that the burden of proof as to the special verdict

[11] Wis J I—Civil, Part I, 1005. *See Osborne v. Montgomery* (1931), 203 Wis. 223, 242, 243, 234 N. W. 372.

[12] Prosser, *Law of Torts,* 3d ed., p. 330, sec. 52. *See* Annot. (1965), 100 A. L. R. 2d 942.

[13] *Williams, supra,* footnote 1, at page 407.

question inquiring as to plaintiff's negligence, if any, was on the defendant?

### Contributory Negligence.

Over plaintiff's objection, the trial court submitted a special verdict question, which asked whether the plaintiff was negligent in failing to look and see: (a) the snowbank, and (b) if her coat was caught in the door. The jury found that the plaintiff was negligent in failing to look and see the snowbank, but not in failing to see that her coat was caught.

Appellant argues, in effect, that it does not matter whether or not she saw the snowbank while or before alighting from the bus because it would have been unreasonable to expect her to do anything other than what she did. It is claimed that she had a right to assume the bus driver would give her enough time to alight from the bus and help her granddaughter off the bus. Thus appellant submits that there is nothing in the record indicating that the plaintiff acted any differently than one would ordinarily act under the circumstances imposed upon her by the defendant.

Appellant cites *Spleas v. Milwaukee & Suburban Transport Corp.*[14] in support of her contention. In that case a bus door closed on the plaintiff's foot and the bus started with the foot in the door. The court stated that:

". . . We believe that once his foot was caught in the door Spleas reacted in an entirely normal manner; he tried to get aboard and, failing to do that, he hopped along as the bus started to move and tried to remove his foot. We agree with the trial court that this conduct would not support a jury verdict of contributory negligence, and, accordingly, there was no necessity for the submission of a question relating thereto."[15]

[14] (1963), 21 Wis. 2d 635, 124 N. W. 2d 593.
[15] *Id.* at page 639.

Thus appellant contends that the undisputed conduct on the part of the plaintiff in getting off the bus and assisting her grandchildren was *entirely normal,* under all of the circumstances.

But even if we were to conclude that Mrs. Furrer's conduct was "entirely normal" within the meaning of the *Spleas Case,* it appears that the question still remains as to whether the plaintiff was negligent before she even left the rear exit of the bus in failing to observe through the window the hazardous conditions. It appears that the jury could reasonably conclude that the plaintiff was negligent in failing to observe from the bus window the conditions created by the snow. Under these conditions the jury may have concluded that the plaintiff was negligent in not exiting from the front of the bus. Thus, a finding of negligence here does not require a finding that plaintiff was negligent in executing the physical acts of stepping off the bus and helping her granddaughter, but rather that before commencing these activities she failed to look and observe the potential danger, *e,g.,* a man may act in an entirely normal manner in trying to avoid a car, but be negligent as to lookout in stepping into the street.

### Martin's Testimony.

A Mr. William N. Martin, supervisor with the city of Milwaukee's bureau of street sanitation, was called by plaintiff to testify about the paths shoveled in the snow aligning with the front and rear exits of buses at bus loading zones.

In the absence of the jury, the plaintiff made an offer of proof that if Mr. Martin were allowed to testify he would, in essence, relate the standard operating procedures for shoveling snow at bus loading zones. He would testify that crews were instructed to shovel paths for the front and rear doors at each bus stop, and that these paths were about three feet wide. Objection was made on

the ground that Martin did not personally observe that the particular bus stop on Twenty-seventh and Galena had been shoveled in conformity with standard operating procedures. This objection was properly sustained.

Appellant relies on *Werlein v. Milwaukee Electric Railway & Transport Co.*,[16] wherein the court stated:

" ' "For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business." ' " [17]

Further in that opinion the court stated that:

" '*Whether the conduct of the common carrier in a given particular accords with its legal duty in the premises is to be tested by comparing its conduct with that generally exercised by those engaged in the same business under the same or similar circumstances.*' (Emphasis supplied.)" [18]

In appellant's brief she states that:

"Through the testimony of Mr. Martin, plaintiff was attempting to establish that the shoveled pathways *provided circumstances wherein the defendant could have stopped the bus in a manner which would have provided more safety for passengers.* Had the jury been able to consider Mr. Martin's description of the pathways with which the exits could have been aligned, they might well have found a greater degree of negligence on the part of the defendant." [19]

However, as respondent points out, *Werlein* has no application here because it dealt with what *other* carriers do under the same or similar circumstances in order to establish a breach of duty on the part of a particular carrier. Here there is no such comparison.

[16] (1954), 267 Wis. 392, 66 N. W. 2d 185.
[17] *Id.* at page 395, quoting from *Ormond v. Wisconsin Power & Light Co.* (1927), 194 Wis. 305, 307, 216 N. W. 489.
[18] 267 Wis. at page 395, 194 Wis. at page 308.
[19] Appellant's brief, page 10.

### Burden of Proof as to Plaintiff's Negligence.

The trial court instructed the jury that the burden of proof with regard to defendant's negligence was on the plaintiff, and that the burden of proof as to the question concerning the element of causation of defendant's negligence, was on the plaintiff. However, in submitting the separate question concerning the plaintiff's negligence, the trial court failed to specifically instruct the jury that the burden of proof as to that question was on the defendant.

However, the court did instruct the jury generally as to burden of proof. It stated that:

"The burden of proof as to any such question is upon the party or parties who contend that you should answer the question yes."

Appellant relies on *Kaboth v. Schrewe*,[20] wherein this court, quoting from *Schacht v. Quick*,[21] stated that " 'The better practice is to state under each question that the burden of proof is upon the defendant or upon the plaintiff, as the case may be.' " But the *Kaboth* court went on to add that:

". . . When the questions are framed as they were in this case so that the party who had the affirmative of the question had the burden of proof in respect to the facts inquired about, an instruction such as was given in this case is sufficient." [22]

Thus it appears that the *Kaboth* court held that it was not prejudicial error to instruct the jury generally as to burden of proof, rather than instruct them prior to each question, although such instructions may be preferable.

*By the Court.*—Judgment reversed.

HANLEY, J., and ROBERT W. HANSEN, J., dissent.

[20] (1933), 211 Wis. 280, 283, 247 N. W. 835.
[21] (1922), 178 Wis. 330, 334, 190 N. W. 87.
[22] 211 Wis. at page 283.