SPLEAS, Respondent, v. MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Appellant.

*November 1—November 26, 1963.*

636

For the appellant there was a brief by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack.*

For the respondent there was a brief and oral argument by *Joseph J. Ziino* of Milwaukee.

GORDON, J.

### 1. *Absence of Contributory Negligence.*

A major contention of the appellant is that the trial court erred in not giving the jury the opportunity to compare the negligence of the bus company driver with the negligence of Spleas. The trial judge took the view that the testimony presented two completely different versions of how the accident happened. If the jury believed the testimony of the bus driver, there would be no negligence on the part of the defendant. On the other hand, if the plaintiff's version were adopted, there could be no negligence on the part of the plaintiff.

From our study of the testimony, we conclude that the trial judge was correct in his analysis. The jury was offered two divergent alternatives, and their acceptance of one or the other would preclude a finding of contributory negligence on the part of Spleas.

The appellant contends that the testimony of the ladies who were passengers on the bus establishes that Spleas approached the bus door from the rear of the bus and in such position was not readily observable by the defendant's driver. While this testimony might affect the existence of negligence on the driver, it could not constitute contributory negligence on the part of Spleas.

In a further valiant effort to support its contention that there may have been contributory negligence on the part of the plaintiff, the appellant points to the testimony wherein Spleas acknowledged that he tried to force his way onto the

bus after his leg was caught in the door. We believe that once his foot was caught in the door Spleas reacted in an entirely normal manner; he tried to get aboard and, failing to do that, he hopped along as the bus started to move and tried to remove his foot. We agree with the trial court that this conduct would not support a jury verdict of contributory negligence, and, accordingly, there was no necessity for the submission of a question relating thereto.

## 2. *Alleged Errors in the Instructions.*

The appellant contends that there are a number of errors in the court's instructions to the jury. It urges that the trial court should not have used the expression "*a* cause of the plaintiff's injuries" when referring to the bus driver's negligence.

By using the expression "*a* cause" instead of "*the* cause" the instructions suggest that there may have been another cause of the injuries. This, of course, is proper terminology when there is to be a comparison of negligence. However, since there was no issue of contributory negligence, it would have been preferable to have used the expression "*the* cause." However, as the case was submitted to the jury, it is abundantly clear that the jury was to choose between the plaintiff's version of the case and the bus driver's version thereof; we conclude that this error in the instructions was harmless.

The defendant also maintains that the trial court so charged the jury as to place undue emphasis on the plaintiff's description of the event. Specifically, the appellant is aggrieved by the fact that the trial court instructed the jury that the "operator must take reasonable precautions to avoid closing the door of his vehicle on a passenger who is entering the vehicle" but did not give a corresponding instruction on the duty of a prospective passenger to avoid forcing his way onto a bus on which the doors have already been closed. Our study of the entire instructions to the jury in this case con-

vinces us that any error of emphasis was minor and could not be considered to have prejudiced the appellant.

It has also been argued by the appellant that the instructions to the jury on the degree of care required by the bus company were improper. The degree of care required of the bus driver toward his passenger was that owed by common carriers to passengers which has been defined as the highest degree of care consistent with the transaction of the business. *Scales v. Boynton Cab Co.* (1929), 198 Wis. 293, 294, 223 N. W. 836; *Hanley v. Milwaukee E. R. & L. Co.* (1936), 220 Wis. 281, 285, 263 N. W. 638; Anno. 42 A. L. R. (2d) 1190. The trial judge designated the bus driver's duty as follows:

". . . to exercise the highest degree of care reasonably to be expected from human vigilance and foresight in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business."

We consider the instruction as given by the trial court entirely proper.

With reference to damages, the appellant contends that the instructions allowed a double recovery for a single item of damage. The relevant instructions of the court on the subject of damages were as follows:

"You will insert such sum of money as you are satisfied will fairly and reasonably compensate Paul Spleas for such pain and suffering, and such impairment of health, physical ability, and bodily functions, and such medical expenses, hospital expenses, loss of earnings, loss of earning capacity, if you find that he did in fact sustain those expenses as a result of this accident, as you find he has suffered to date and is reasonably certain to suffer in the future as a natural consequence of the injuries he has sustained."

This court has frequently wrestled with the problem of possible double recovery in a jury's assessment of damages. *Sharp v. Milwaukee & S. T. Corp.* (1963), 18 Wis. (2d)

467, 482, 118 N. W. (2d) 905; *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 350, 99 N. W. (2d) 163; *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 237, 238, 92 N. W. (2d) 884; *Kalish v. Milwaukee & S. T. Corp.* (1955), 268 Wis. 492, 497, 498, 67 N. W. (2d) 868.

The likelihood·of the jury in the instant case having made a double allowance for damages is remote in view of the fact that a general verdict was used. We deem that it is unrealistic to believe that the jury, in submitting a single figure for damages, would have twice incorporated any single factor. In *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 489, 120 N. W. (2d) 692, this court noted that the omission of any itemization in a damage question makes it difficult on review to determine just what the jury considered in arriving at its award, and, in the absence of proof that the jury's answer is erroneous, it will not be disturbed.

The appellant also charges that the instructions of the trial court were erroneous in incorporating the factor of "loss of earning capacity" as a basis for damages. The evidence on this element of potential damage was very meager. Spleas testified that he was not always able to do his regular work, and as a result he received only a few small pay raises since the date of the accident, while other employees received more raises. There is applicable to Spleas' circumstances the expression of this court in *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 236, 92 N. W. (2d) 884, wherein it was said:

> "Earning capacity is related to capacity to do the work and earn the salary, and may be impaired materially although the employer generously continues to pay the old rate."

In his hornbook on Damages (p. 309, sec. 87), Professor McCormick suggests that courts should scan with more-charitable eyes the sufficiency of proof of loss of earning

capacity than the proof of actual past loss of wages. We conclude that the court cannot hold as a matter of law that there was no evidence to warrant an instruction of impairment of future earning capacity. We thus distinguish the instant case from *Behringer v. State Farm Mut. Automobile Ins. Co.* (1959), 6 Wis. (2d) 595, 601, 95 N. W. (2d) 249, where there was a complete absence of evidence of loss of earning capacity.

Also, the court's instruction on damages can be construed as permitting an award for future medical and hospital expenses, and in this respect there was error. The record is devoid of any testimony on the part of a medical expert that there will be future medical or hospital expenses, and thus falls squarely within the rule recited in *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 311, 120 N. W. (2d) 156. There this court quoted from *Sawdey v. Schwenk* (1958), 2 Wis. (2d) 532, 87 N. W. (2d) 500, 69 A. L. R. (2d) 1256, and *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651, as follows:

" '. . . no award of damages for future pain and suffering can be upheld which is not supported by expert medical testimony. We deem that the same rule is applicable in the case of an award for future medical expenses.' "

While there was some evidence that the injury would be permanent, there was no evidence of future medical or hospital expenses. In *Behringer v. State Farm Mut. Automobile Ins. Co.* (1959), 6 Wis. (2d) 595, 602, 95 N. W. (2d) 249, this court adhered to the rule that a jury should not be permitted to speculate as to the amount of future expenses of medical treatment in the absence of any evidence as to the possible cost thereof. It was found to be reversible error to instruct in a manner which would permit the jury to include such an item in its damages. *La Fave v. Lemke* (1958),

3 Wis. (2d) 502, 509, 510, 89 N. W. (2d) 312. But cf. *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 493, 120 N. W. (2d) 692, which concluded that the error was not prejudicial under the circumstances. If this error could not be corrected under the *Powers* rule, we would be inclined to follow the *Behringer Case* and conclude that the error was prejudicial; however, as will be indicated later, the defect can be alleviated by a modification of the judgment as to damages.

### 3. *The Second Accident.*

On September 12, 1962, the plaintiff was involved in an accident at work. A ladder he was climbing broke, and he fell approximately four feet to a cement floor, landing on part of the ladder. He was hospitalized for four weeks following that accident. His injuries from this fall were a fractured sacrum and a fractured radius of the right arm.

The defendant urges that under the doctrine of *Smee v. Checker Cab Co.* (1957), 1 Wis. (2d) 202, 83 N. W. (2d) 492, the plaintiff has failed to meet his burden of proof. The *Smee Case* stands for the proposition that where there could have been two causes for an injury the plaintiff has the burden of proof to demonstrate what part of the damages was attributable to the accident in question. In the instant case, there is evidence of considerable treatment and of disability before the 1962 accident.

The plaintiff established with competent medical evidence that his injuries resulted from the first accident. The defendant did not submit contradictory medical proof to demonstrate that the injuries resulted from the second accident and, therefore, in our opinion, there was sufficient evidence for the jury to decide that the plaintiff's damages were attributable to the 1955 accident.

## 4. *Excessive Damages.*

The jury assessed the plaintiff's damages at $15,000, and the appellant contends that such figure is excessive. This necessitates an analysis of the plaintiff's injuries. After his fall, the plaintiff was helped onto the bus and went to his place of employment, where he was examined by the company doctor, Dr. Carl Dunst. Dr. Dunst taped his back and sent him to Columbia Hospital for X rays. The plaintiff did not return to work until three or four days later.

Prior to the accident, the plaintiff had been in good health. He does maintenance and cleaning work at Lakeside Laboratories, where he has been employed since 1951. At the time of the trial he was sixty-four years of age.

Spleas testified that between December, 1955, and October, 1957, his physical condition worsened. However, during this two-year period, he continued in his regular employment. He complained of backaches, headaches, and sleeplessness, and on October 10, 1957, he entered St. Mary's Hospital, where a myelogram was performed. He re-entered the hospital on October 19, 1957, and was placed in traction for sixteen days. Thereafter he wore a body cast until February, 1958. He left the hospital on November 14, 1957, but did not return to work until December 16, 1957. Except for the myelogram, no surgery was performed upon him as a result of his injury.

Dr. Dunst expressed the opinion that Spleas had a protruded intervertebral disc. However, he deferred to Dr. J. Howard Johnson's conclusion that Spleas did not have this disability. Dr. Keith Epperson also concluded that there was a herniation of the intervertebral disc. Dr. David Ansfield testified that, in his opinion, Spleas had a "normal anatomical configuration of the spinal canal;" he considered that the complaints of the back were subjective and would clear up. Dr. Louis Kagen found that Spleas had a chronic

low back strain and that the symptoms and pains related thereto were of a permanent nature.

It is apparent that the testimony of the medical experts was in conflict. In our opinion, a fair appraisal of the nature and seriousness of Spleas' injuries does not warrant the damages assessed by the jury. From a review of the evidence, we determine that $10,000 is a reasonable sum to award to the plaintiff for his damages in this case, including his pain and suffering. We consider that such figure makes an appropriate allowance for any error which may have resulted from the court's improper instruction relative to future medical expenses.

While we recognize that the jury's appraisal of damages should not be disturbed in the absence of error, it is nevertheless our duty to evaluate the testimony, and if the award is excessive even when viewed in the light most favorable to the plaintiff, it is our responsibility to so find. See *Albers v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 385, 117 N. W. (2d) 364; *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 117 N. W. (2d) 660; *Freuen v. Brenner* (1962), 16 Wis. (2d) 445, 114 N. W. (2d) 782; *Teufel v. Home Indemnity Co.* (1961), 15 Wis. (2d) 67, 111 N. W. (2d) 893; *Beijer v. Beijer* (1960), 11 Wis. (2d) 207, 105 N. W. (2d) 348.

Applying the technique adopted by this court in *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, the case will be remanded to the trial court with instructions to enter a formal order for a new trial on the question of damages only, unless within twenty days after the return of the record from this court to the trial court the plaintiff files a consent with the clerk of the circuit court to accept the sum of $10,000 damages plus costs and disbursements. If the appropriate notice of his election to accept the reduced amount and to remit the difference between the reduced amount and the jury award is given by Spleas within

the time specified, then in lieu of the order for a new trial, the circuit court should enter a judgment for such reduced amount. See *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 578, 117 N. W. (2d) 660.

### 5. *Modification of the Powers Rule.*

In *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 91, 102 N. W. (2d) 393, we adopted the rule of granting an option to a plaintiff to remit excessive damages when the "excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, . . ."

We have found the *Powers* rule to be a valuable tool, both in this court and in trial courts, to avoid unnecessary retrials. In the instant case, as previously noted, the trial court erred in instructing the jury with regard to allowing damages for future medical and hospital expenses. Under the authorities noted in the discussion of that matter above, such error would have to be treated as a prejudicial one, and under the quoted limitations of the *Powers* rule the option technique could not be used. We have concluded that even though the excessive verdict may be the result of a prejudicial error committed during the course of the trial, the *Powers* rule may nevertheless be employed where such error directly relates to damages.

Thus, in the instant case, the granting of an option to the plaintiff to remit the excess over and above a reasonable amount can properly be given to the plaintiff even though there was a prejudicial error during the trial for the reason that the acceptance of the reduced amount will remove the prejudicial effect of the error. To the extent that a prejudicial error is confined to errors directly related to the damages, the *Powers Case* is modified by this decision.

*By the Court.*—Judgment reversed and remanded, with directions. The appellant is entitled to costs on this appeal.