COURT OF APPEALS
DECISION
DATED AND FILED

December 21, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1872**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV367

IN COURT OF APPEALS
DISTRICT IV

DAVID KNOTT,

   PLAINTIFF-APPELLANT,

 V.

TIMOTHY B. O'BRIEN LLC,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Dane County: MARIO WHITE, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   David Knott appeals a judgment that was entered in favor of his former employer following a jury trial on Knott's claim that he was wrongfully discharged in violation of public policy.  On appeal, Knott takes issue with two aspects of the jury instructions.  First, he contends that the circuit court erred when it declined to add language to the standard instruction that would have instructed the jury to apply the "substantial factor" standard when assessing causation.  Second, he asserts that the court erred when it declined to instruct the jury on the purportedly preclusive effect of a final administrative agency determination about his claim for unemployment compensation benefits.  We reject Knott's arguments and affirm the judgment.

## BACKGROUND

¶2     Knott was employed as a wellness consultant at a nutrition store called Apple Wellness from 2013 until 2017.  At all pertinent times, Apple Wellness was owned by Timothy B. O'Brien LLC, which was in turn owned by Timothy and Rebecca O'Brien.[1]  Apple Wellness terminated Knott's employment in February 2017, allegedly because he "engaged in a pattern of time clock manipulation."

---

[1] Although the company Timothy B. O'Brien LLC is the employer and the Defendant-Respondent in this case, we use the name "Apple Wellness" when referring to Knott's former employer in order to distinguish the employer from Timothy and Rebecca O'Brien, the individuals who owned Timothy B. O'Brien LLC and supervised Knott's employment.  We refer to Timothy and Rebecca collectively as the O'Briens, and individually by their full names.

On a related note, Apple Wellness was also known as "The Healthy Place" at some point.  For consistency, we refer to the store as Apple Wellness throughout the opinion, regardless of which name is used in the underlying documents and testimony in the record.

¶3    Knott contends that this alleged reason for his discharge was merely pretextual, and that the real reason Apple Wellness terminated his employment was that he filed a wage complaint with the state department of workforce development (DWD) several months prior to his termination. Based on this theory, Knott initiated this action in the Dane County Circuit Court, alleging that his discharge violated a fundamental and well-defined public policy. *See Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 574, 335 N.W.2d 834 (1983) (providing a narrow exception to the employment-at-will doctrine, under which employees who are terminated in violation of certain fundamental and well-defined public policies may bring civil actions for wrongful discharge against their employers). Knott's case ultimately proceeded to a two-day jury trial, and the following facts are derived from the testimony and exhibits presented at trial.

¶4    As noted, Knott began working for Apple Wellness in 2013. During his employment, Knott was paid a base salary plus commissions. For purposes of wage laws governing overtime pay, Apple Wellness classified Knott as being exempt from overtime pay requirements.

¶5    According to the O'Briens, Knott was frequently tardy for his shifts. In 2016, Apple Wellness implemented a new policy that required its employees to clock in and out using computer software, and to be clocked in at least five minutes prior to the start of any shift.

¶6    Knott's annual performance review was scheduled for November 14, 2016. That morning, Knott accessed his time entries from his home and reviewed his work history. At trial, Knott testified that, in the course of this review, he discovered "extreme errors" in his recorded times, including dates when he had failed to clock out entirely, and he made retroactive changes to roughly twenty

different time entries that he had recorded throughout the year. Knott testified that, in making these adjustments, he attempted to accurately reconstruct the hours that he worked by referencing other data points that were recorded in Apple Wellness's computer system. However, it is undisputed that Knott added clock-in and clock-out times on several holidays that he undisputedly did not work.

¶7     The parties disagree about whether Knott disclosed the adjustments he made to the O'Briens during his November 2016 performance review. Knott testified that he immediately informed them of the adjustments, which indicated he had worked more than 150 hours of overtime, and that the O'Briens "passed right over it." By contrast, the O'Briens denied that he disclosed the adjustments during his performance review; they instead contended that they did not discover the adjustments until several months later.

¶8     During the performance review, the O'Briens also provided Knott with a proposed new employment contract. One provision in the contract provided that, to the extent he was not clocked in five minutes before the start of his scheduled shift more than four times in a month, "[a]ny late occurrence [thereafter would] result in a $35 fine for each occurrence, to be taken from [Knott's] bonus for that month." Knott did not agree to those terms, which, he contended, violated state wage laws.

¶9     In early December 2016, Apple Wellness informed Knott that, based on his tardiness, it would deduct $105 from a discretionary bonus. Several days later, Knott initiated the first of four administrative claims with DWD that pertained to his employment. These claims are: the claim that he filed in response to the $105 deduction; a subsequent claim that was part of the same DWD file and related to his entitlement to overtime wages; a claim for unemployment

compensation benefits that he filed following the February 2017 termination of his employment; and ultimately, a complaint alleging employment discrimination in violation of the Wisconsin Fair Employment Act.

¶10    In this first claim, which we refer to as the "improper deduction claim," Knott alleged that the deduction from his bonus violated WIS. STAT. § 103.455 (2021-22)[2]  (providing that an employer cannot make any deductions from an employee's wages for loss or faulty workmanship without a court order or the employee's consent).  A DWD investigator determined that the deduction constituted an illegal withholding of wages.[3]

¶11    In early January 2017, Knott emailed the same DWD investigator who handled the improper deduction claim to raise a number of additional issues pertaining to his employment.  These issues included questions about his status as an employee who was exempt from overtime pay requirements and his possible entitlement to overtime pay.  We refer to Knott's subsequent claim for unpaid overtime wages as the "overtime claim," and collectively to the improper deduction and overtime claims, which were handled as part of the same DWD file, as the "wage complaint."

¶12    In response to Knott's overtime claim, the investigator asked Apple Wellness for additional information about Knott's hours, pay structure, and duties. It appears that shortly thereafter, Apple Wellness acknowledged that Knott was entitled to some overtime pay and the DWD investigator facilitated a resolution

---

[2]  All references to the Wisconsin Statutes are to the 2021-22 version.

[3]  The DWD investigator ordered Apple Wellness to pay Knott $105 by January 20, 2017.  Apple Wellness eventually paid Knott, but not by the deadline that DWD had imposed.

5

between the parties regarding the amount Knott was entitled to receive based on the overtime hours that he worked.

¶13     Meanwhile, in the course of investigating the number of hours that Knott had worked, the O'Briens reviewed Knott's recorded time entries for the prior year. It was at that point, according to the O'Briens, that they discovered the numerous retrospective adjustments that Knott had made to his time clock entries just before his annual performance review.

¶14     The O'Briens confronted Knott about these adjustments on February 16, 2017. Knott testified the interaction was "incredibly brief" and "very aggressive." According to Knott, he explained that he had made the adjustments to correct errors, and only to the extent that he could match the adjustments to other data points, but the O'Briens "essentially" told him that his reason for making the adjustments did not matter. Apple Wellness terminated Knott's employment later that day for "falsifying time records."

¶15     Shortly after his discharge, Knott filed a claim for unemployment compensation benefits ("the unemployment claim"). Apple Wellness opposed Knott's entitlement to benefits, alleging that he had been discharged based on "misconduct" or "substantial fault" in connection with his employment.[4] An investigator issued an initial determination finding that Knott was entitled to benefits, which Apple Wellness appealed. Following an evidentiary hearing,

---

[4] Pursuant to WIS. STAT. § 108.04(5), an employee who is discharged for misconduct connected with their employment is ineligible for the immediate payment of benefits. And pursuant to § 108.04(5g), an employee whose work is terminated for substantial fault by the employee connected with the employee's employment is also ineligible for the immediate payment of benefits. A discharged employee is presumed to be entitled to benefits, and the burden is on the employer to prove misconduct or substantial fault.

DWD issued a final determination finding, among other things, that Apple Wellness did not prove that Knott "falsified any records" and, therefore, his conduct did not constitute "misconduct" or "substantial fault." The O'Briens did not seek judicial review of DWD's final determination, which we discuss in greater detail below.

¶16 Knott also filed a discrimination complaint with DWD's equal rights division ("the discrimination complaint"). He alleged, among other things, that Apple Wellness terminated his employment because he "previously filed a wage and hour complaint," and that this constituted discrimination in violation of Wisconsin's Fair Employment Act, WIS. STAT. § 111.322(2m)(a). The DWD investigator who was assigned to the case issued an initial determination, which found no probable cause that Apple Wellness violated the Fair Employment Act when it terminated Knott's employment. Among other things, the DWD investigator determined that Apple Wellness "articulated [a] legitimate non-discriminatory reason[] for the … discharge"—namely, Knott's alteration of his time records—and that Knott had not "provided information sufficient to show these reasons to be [a] pretext for discrimination based upon the wage complaint." Knott did not appeal or seek judicial review of the dismissal of his discrimination claim.

¶17 Knott then filed the circuit court case that is the subject of this appeal. In his complaint, Knott alleged that O'Brien had wrongfully discharged him in violation of the public policy evinced by WIS. STAT. § 103.455. As noted, § 103.455 forbids deducting an employee's wages for loss or faulty workmanship without a court order or the employee's consent, and our supreme court has determined that § 103.455 evinces a fundamental and well-defined public policy against economic coercion and can be the basis for a claim that an employee was

7

wrongfully discharged in violation of public policy. ***Wandry v. Bull's Eye Credit Union***, 129 Wis. 2d 37, 47, 384 N.W.2d 325 (1986).[5]

¶18 In its answer, Apple Wellness admitted that it had "withheld a discretionary bonus of $105 from [Knott] due to [Knott's] chronic tardiness." However, Apple Wellness alleged that Knott had been terminated due to his "manipulation of the time records and theft of time," not because he filed a wage complaint.

¶19 Neither party filed any dispositive motions. Two key disputes emerged in the parties' pretrial filings and during the final pretrial conference.

¶20 The first dispute concerned language in WIS JI—CIVIL 2750, which is the standard jury instruction governing claims of wrongful discharge in violation of public policy. The standard instruction includes three paragraphs, including the following paragraph, as modified to fit the facts of this case:

> [Knott] claims that [he] was fired from [his] job by [Apple Wellness] because [he filed a claim with the Department of Workforce Development seeking payment of $105 which was determined to be wrongfully withheld]. If you find that [Apple Wellness] fired [Knott] for that reason, then [Knott] was wrongfully discharged.

---

[5] In ***Wandry v. Bull's Eye Credit Union***, 129 Wis. 2d 37, 47, 384 N.W.2d 325 (1986), the employee alleged that she was discharged because she would not reimburse her employer for the loss that resulted from the employee's acceptance of a bad check from a customer. ***Id.*** at 40. Although her employer had not expressly violated WIS. STAT. § 103.455 by seeking the reimbursement, *see **id.*** at 44, and she therefore would have had no basis to file a wage claim under § 103.455 or a discriminatory discharge claim under the Wisconsin Fair Employment Act, *see* WIS. STAT. § 111.322(2m)(a) (forbidding discrimination against an employee for filing a wage complaint under § 103.455), our supreme court concluded that the employee's complaint alleged facts, that if true, showed that her discharge violated the public policy against economic coercion that was evinced by the statute, *see **id.*** at 47-49.

WIS JI—CIVIL 2750. Knott asked the circuit court to further modify that instruction by adding an additional paragraph that was modeled after WIS JI—CIVIL 1500 and would have instructed the jury to apply the "substantial factor" standard of causation. The additional paragraph Knott proposed would have provided:

> So you must decide if the decision to terminate Knott was because Knott exercised his right not to have amounts deducted or withheld from his paycheck. Another way of saying this is: was Knott exercising his rights a cause of [Apple Wellness's] decision to terminate Knott? This question does not ask about "the cause" but rather "a cause" because a decision may have more than one cause. Someone's decision was "because" of something, or was caused by that something, if it was a substantial factor in producing the decision. A decision may be caused by one or more underlying factors.

(Emphasis omitted.) Apple Wellness opposed Knott's proposed addition to the instruction on the ground that it contained confusing language.

¶21    The circuit court ultimately rejected Knott's request. It reasoned that parties in wrongful discharge cases might commonly dispute the employer's reason or reasons for the discharge, but even so, "the [jury] instruction[] committee did not include any sort of 'substantial cause'" language in the standard instruction. Therefore, under the circumstances, the court determined that it would not be appropriate to modify the instruction as Knott requested.

¶22    The second dispute concerned the preclusive effect, if any, of DWD's final determination regarding Knott's unemployment claim. Although Knott had not filed a pretrial motion in limine seeking to bar Apple Wellness from introducing evidence at trial that would contradict DWD's legal and factual determinations regarding Knott's unemployment claim, Knott argued that some of DWD's determinations were preclusive. Apple Wellness argued that DWD's

9

unemployment decision did not have preclusive effect and that, if any decision gave rise to issue preclusion, it would be DWD's initial determination finding no probable cause to support Knott's discrimination complaint.

¶23 The circuit court ultimately determined that the unemployment and discrimination decisions were both admissible, but that it would not instruct the jury that either had any preclusive effect. Instead, the court opted to instruct the jury that it was not bound by either of DWD's determinations, that it could consider both, and that the jury could give each determination whatever weight it deemed appropriate.

¶24 Knott's case proceeded to trial, with the primary dispute being Apple Wellness's reason for discharging Knott. There was no significant dispute about the extent of the adjustments that Knott made to his time entries, but the parties' testimony diverged significantly on the nature and propriety of those adjustments.

¶25 Knott's theory of the case was that Apple Wellness's "only explanation" for discharging him was that he had falsified time records, and that this asserted reason was pretextual. Knott conceded that he had *altered* his time records, but he emphasized that the evidence would show that he had not *falsified* them. According to Knott, DWD's determinations with regard to the unemployment claim and other trial evidence all indicated that the adjustments were not inappropriate and that Knott had not falsified any records. Therefore, the jury should infer that he had been discharged for filing the improper deduction complaint. Knott relied on his testimony that "it was incredibly tense in the workplace" following his improper deduction claim, and that he "sensed" that "they were looking to fire me." In closing arguments, Knott argued his "substantial factor" theory of causation to the jury, stating that if the jury found his

improper deduction wage complaint was "a cause" or a "substantial factor" of his discharge, then he was wrongfully discharged in violation of public policy.

¶26    Apple Wellness's theory of the case was that it discharged Knott because of his time clock adjustments. In its opening argument, Apple Wellness conceded that it had been a mistake to deduct money from Knott's bonus as a fine for his chronic tardiness, but it argued that that was not the reason the O'Briens decided to terminate his employment. Apple Wellness argued that the O'Briens attempted to "make it right" after Knott filed his overtime claim, and that, in the course of attempting to remedy that issue, they discovered the time clock adjustments. According to the O'Briens, these adjustments were extensive, unauthorized, and not in keeping with company policy. In closing argument, Apple Wellness argued:

> If you conclude that [Knott] was fired because he filed a claim for $105, then he was wrongfully terminated, absolutely, but if you believe that he was terminated for any other reason, you cannot find that he was wrongfully terminated. Remember, he can be terminated for any reason or no reason.… But they had a reason. They found out that he had changed his records and not told them.

¶27    The jury returned a verdict finding that Knott was not wrongfully discharged, and the circuit court entered judgment in Apple Wellness's favor. Knott appeals.[6]

---

[6] In its appellate briefing, Apple Wellness contends that we lack jurisdiction over this appeal because Knott filed his notice of appeal on November 1, 2022, which was one week before the circuit court entered final judgment on November 8, 2022. Apple Wellness argues that an appeal cannot be taken before a final judgment is entered, and that Knott's appeal must therefore be dismissed "without recourse or remand." We disagree. Under WIS. STAT. § 808.04(8) we treat Knott's notice of appeal as if it had been filed on the date that the final judgment was entered, and therefore we have jurisdiction over the appeal. *See* § 808.04(1).

(continued)

11

**DISCUSSION**

¶28  The issue in this appeal is whether the circuit court erred when it denied Knott's requests with regard to the jury instructions.  "A circuit court has broad discretion" when instructing a jury, and the "'decision to give or not to give a requested jury instruction …' will not be reversed absent an erroneous exercise of discretion."  *State v. Hubbard*, 2008 WI 92, ¶28, 313 Wis. 2d 1, 752 N.W.2d 839 (quoting *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶42, 281 Wis. 2d 173, 696 N.W.2d 194).  A court properly exercises its discretion when it "fully and fairly inform[s] the jury of the rules of law applicable to the case," which "assist[s] the jury in making a reasonable analysis of the evidence."  *Dakter v. Cavallino*, 2015 WI 67, ¶31, 363 Wis. 2d 738, 768, 866 N.W.2d 656.  Instructions are erroneous if they misstate the law or describe it "in a manner likely to mislead the jury."  *Id.*, ¶84.

¶29  Whether the court erred by stating the law incorrectly or in a misleading manner constitutes a question of law that we review de novo on appeal.  *Smith v. Goshaw*, 2019 WI App 23, ¶9, 387 Wis. 2d 620, 928 N.W.2d 619.  "As a general matter, if we determine 'that the overall meaning communicated by the instruction as a whole was a correct statement of the law, and the instruction comported with the facts of the case at hand, no ground for reversal exists.'"  *Nommensen v. American Continental Ins. Co.*, 2001 WI 112, ¶50, 246 Wis. 2d 132, 629 N.W.2d 301 (citation omitted).

---

We further observe that, in support of this jurisdictional argument, Apple Wellness relies in part on an unpublished per curiam opinion that cannot be cited in any Wisconsin court except under limited circumstances not present here.  *See* WIS. STAT. RULE 809.23(3)(a)  We remind counsel that our rules do not allow for the citation of such opinions, and that violations of our rules can be grounds for sanctions.  *See* WIS. STAT. RULE 809.83(2).

¶30    Knott takes issue with the two aspects of the jury instructions that are mentioned above—the circuit court's decision to not instruct the jury on the substantial factor standard of causation, and its decision to not instruct the jury on the purportedly preclusive effect of the DWD determination that resolved Knott's unemployment claim. We address these issues in turn.

## I.  Substantial Factor

¶31    Knott argues that the substantial factor standard is the test for causation in Wisconsin, and that it applies to his wrongful discharge claim. He contends that the circuit court erred by declining to provide his proposed instruction, or alternatively, by otherwise failing to provide a different instruction that would have directed the jury to apply the substantial factor test.

¶32    We begin our analysis with an overview of the law governing claims for wrongful discharge in violation of public policy. "Wisconsin, like many states, adheres to the doctrine of employment-at-will." *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶33, 237 Wis. 2d 19, 614 N.W.2d 443. This doctrine has been a "stable fixture of our law since 1871" and provides that, if the terms of employment are indefinite, the "employer may discharge an employee 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of a legal wrong.'" *Id.*, ¶33 (quoting *Brockmeyer*, 113 Wis. 2d at 574). "Generally, at-will employees cannot pursue legal claims stemming from … an employer's decision to terminate the employment relationship." *Brockmeyer*, 113 Wis. 2d at 574.

¶33    Federal and state laws have limited this doctrine in some respects over time, allowing employees to seek legal relief for the termination of at-will employment under certain circumstances. *Strozinsky*, 237 Wis. 2d 19, ¶34 (citing

*Brockmeyer*, 113 Wis. 2d at 567-68). Wisconsin's Fair Employment Act identifies many such circumstances, *Brockmeyer*, 113 Wis. 2d at 576 n.17, and it allows employees who have been discharged for reasons prohibited by the Act to file discrimination claims with the DWD, *see* WIS. STAT. §§ 111.321-111.39. As one pertinent example, the Act provides that, if an employee was discharged "because" the employee "file[d] a complaint or attempt[ed] to enforce any right under" statutes including WIS. STAT. § 103.455, which forbids certain deductions, the employee may challenge the discriminatory discharge by filing a discrimination complaint with DWD pursuant to § 111.39.[7] *See* § 111.322(2m)(a).

---

[7] Although the gravamen of Knott's cause of action is that Apple Wellness terminated his employment because he filed the improper deduction claim pursuant to WIS. STAT. § 103.455, Knott did not and does not describe his cause of action as a discriminatory discharge claim. We discern two potential reasons that Knott does not use that label to describe the claim he is pursuing, both of which could be raised as a defense to Knott's wrongful discharge claim.

First, as discussed above, the Wisconsin Fair Employment Act provides a statutory remedy for discriminatory discharge claims, *see* WIS. STAT. § 111.322(2m)(a), and our supreme court has determined that, in such cases, the statutory remedy is exclusive. *See Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 576 & n.17, 335 N.W.2d 834 (1983) (the "legislature has enacted a variety of statutes to prohibit certain types of discharge," and "[w]here the legislature has created a statutory remedy for a wrongful discharge, that remedy is exclusive"); *see also Repetti v. Sysco Corp.*, 2007 WI App 49, ¶¶9, 13, 300 Wis. 2d 568, 730 N.W.2d 189 (no wrongful discharge action when the legislature has already provided adequate mechanisms for the vindication of public policy). Therefore, if an employee is discharged because the employee filed a complaint or attempted to enforce any right under WIS. STAT. § 103.455, the remedy is to file a discrimination complaint with DWD under § 111.322(2m)(a), with the option of seeking judicial review of DWD's final determination under WIS. STAT. § 111.395 and WIS. STAT. ch. 227. Because the legislature has provided a statutory remedy for employees who are discharged because they filed an improper deduction claim under § 103.455, the statutory remedy is exclusive and Knott cannot pursue such a claim under the wrongful-discharge-in-violation-of-public-policy framework that was created in *Brockmeyer*. *Brockmeyer*, 113 Wis. 2d at 576 n.17; *Repetti*, 300 Wis. 2d 568, ¶¶9, 13.

Second, as also discussed above, Knott did in fact file a discrimination complaint with DWD, alleging, among other things, that Apple Wellness discharged him for filing the improper deduction claim. Indeed, a DWD investigator dismissed his claim for lack of probable cause, and Knott did not appeal that determination within DWD or seek judicial review. Therefore, Knott has not exhausted the exclusive remedy for his discrimination claim.

(continued)

¶34    However, our supreme court has also recognized that "the legislature has not and cannot cover every type of wrongful termination that violates a clear mandate of public policy." *Brockmeyer*, 113 Wis. 2d at 576. Therefore, as mentioned above, the *Brockmeyer* court crafted a narrow public policy exception to the employment-at-will doctrine. *Strozinsky*, 237 Wis. 2d 19, ¶35 (citing *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 663, 571 N.W.2d 393 (1997)). This judicially created exception protects employees who are wrongfully discharged under circumstances that are not covered by federal or state legislation and those whose job security is not safeguarded by a collective bargaining agreement or civil service regulations. *Brockmeyer*, 113 Wis. 2d at 567-68. This exception grants employees a cause of action for those discharges that violate public policy.

¶35    To prevail in a wrongful-discharge-in-violation-of-public-policy claim, an employee must identify a fundamental and well-defined public policy that is "evidenced by" a constitutional, statutory, or administrative provision. *See Winkleman v. Beloit Mem'l Hosp.*, 168 Wis. 2d 12, 22, 483 N.W.2d 211 (1992) (citing *Brockmeyer*, 113 Wis. 2d at 574); *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶25, 244 Wis. 2d 559, 628 N.W.2d 364. The employee must also demonstrate that the discharge violated that fundamental and well-defined public policy. *See Winkleman*, 168 Wis. 2d at 22, 24-26; *Kempfer v. Automated Finishing, Inc.*, 211 Wis. 2d 100, 114, 564 N.W.2d 692 (1997). This requires the employee to demonstrate a connection between the discharge and the public policy that was allegedly violated, *see Wandry*, 129 Wis. 2d at 47, typically that the employee

However, Apple Wellness has not sought dismissal of Knott's wrongful discharge claim on either basis, and we do not further address those potential issues in this opinion.

15

"was terminated for refusing to act contrary to [the] fundamental and well-defined public policy," *Kempfer*, 211 Wis. 2d at 114. If the employee succeeds, the burden shifts to the employer to show that the discharge was for "just cause," meaning, in this context, a reason that does not violate public policy. *Winkleman*, 168 Wis. 2d at 24 (citing *Brockmeyer*, 113 Wis. 2d at 574); *id.* at 27 (appearing to describe just cause as an affirmative defense); *see also* WIS JI—CIVIL 2750 (comments).

¶36 Here, in instructing the jury on Knott's wrongful-discharge-in-violation-of-public-policy claim, the circuit court followed the standard instruction closely, directing the jury as follows:

> In Wisconsin, an employer may discharge an employee for a good reason, for no reason, or even for a thing that is morally wrong, without committing a legal wrong. An exception to this rule is where the termination of the employee's job violates a well-established and important public policy. Public policy in Wisconsin prohibits the firing of an employee for filing a wage claim under Wisconsin Statute Section 103.455.
>
> David Knott claims he was fired from his job by [Apple Wellness] because he filed a claim with the Department of Workforce Development seeking payment of $105 which was determined to be wrongfully withheld. If you find that [Apple Wellness] fired David Knott for that reason, then David Knott was wrongfully discharged.
>
> A discharge is not wrongful merely because it is unreasonable or motivated by bad faith or malice. Further, a discharge is not wrongful merely because the discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it.[8]

---

[8] In its entirety, WIS JI—CIVIL 2750 provides:

(continued)

16

The court also tailored the special verdict question to mirror the language in the second paragraph of its instruction, such that the special verdict question asked: "Was David Knott wrongfully discharged from his employment by [Apple Wellness] because he filed a wage claim with the Department of Workforce Development seeking payment of $105 which was determined to be wrongfully withheld?"

¶37    The circuit court's instruction was consistent with the above-stated legal standard for wrongful-discharge-in-violation-of-public-policy claims.    It followed the pattern instruction, explaining that Knott claimed he was discharged "*because* he filed a claim with the Department of Workforce Development," and instructing the jury that Knott "was wrongfully discharged" if the jury found that

---

In Wisconsin, an employer may discharge an employee for good reason, for no reason, or even for a reason that is morally wrong, without committing a legal wrong.  An exception to this rule is (where the termination of the employee's job violates) (where the employee is discharged for refusing an employer's command to do something that would itself violate) a well-established and important public policy.  Public policy in Wisconsin prohibits the firing of an employee for (insert policy).

(Plaintiff) claims that (he) (she) was fired from (his) (her) job by (defendant) because (give public policy being violated, e.g., (he) (she) refused to commit perjury).  If you find that (defendant) fired (plaintiff) for that reason, then (plaintiff) was wrongfully discharged.

A discharge is not wrongful merely because it is retaliatory, unreasonable, or motivated by bad faith or malice.  Further, a discharge is not wrongful merely because the discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it.

Per Knott's request, the circuit court made one revision to the standard instruction, removing "retaliatory" from the third paragraph.  Neither party asserts that this modification was erroneous or is material to any issue on appeal, and we discuss it no further.

Apple Wellness "fired" him "*for that reason*." (Emphasis added.) Similarly, the modified verdict form charged the jury with determining whether Knott was discharged "*because* he filed" the improper deduction claim with DWD. (Emphasis added.)

¶38 Knott does not argue that the instruction or verdict form misstated the law governing wrongful discharge claims. Indeed, Knott concedes that, in order for the jury to find that he was wrongfully discharged, the jury had to find that Apple Wellness was motivated to discharge him "*because*" he filed the improper deduction complaint, or in other words, that Apple Wellness discharged him "*for that reason*." And, aside from using different language to describe the public policy that Apple Wellness allegedly violated, Knott's proposed instruction would have retained nearly the entirety of the instruction that the court provided to the jury.

¶39 Instead, Knott argues that the circuit court should have provided additional instruction to the jury regarding the meaning of the word "because," and that the court's refusal to provide additional instruction was an erroneous exercise of discretion. To this end, Knott relies on case law about the "substantial factor" standard of causation, which has been developed through the common law to address causation in tort and criminal cases.

¶40 The substantial factor test is a test of "cause-in-fact" that is commonly used in negligence and criminal actions. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 600 (1979) (explaining that the test of cause-in-fact in negligence actions is the substantial factor standard); *State v. Oimen*, 184 Wis. 2d 423, 436, 516 N.W.2d 399 (1994) (applying the substantial factor test in the context of felony murder); *State v. Owen*, 202 Wis. 2d 620, 631,

18

551 N.W.2d 50 (Ct. App. 1996) (applying the substantial factor test in the context of a criminal charge for recklessly causing great bodily harm). Under this test, an actor's action is a "cause" of a result if the action "was a substantial factor in contributing to the result." *Eau Claire Press Co. v. Gordon*, 176 Wis. 2d 154, 160, 499 N.W.2d 918 (Ct. App. 1993); *see also Morgan*, 87 Wis. 2d at 735; *Cefalu v. Continental West. Ins. Co.*, 2005 WI App 187, ¶11, 285 Wis. 2d 766, 703 N.W.2d 743. To be a substantial factor, the action does not need to be the sole, primary, or even immediate cause, but instead only a significant factor that leads to the result. *See State v. Miller*, 231 Wis. 2d 447, 455-57, 605 N.W.2d 567 (Ct. App. 1999) (citing *Oimen*, 184 Wis. 2d 423; *Owen*, 202 Wis. 2d 620). Under this test, there can be more than one substantial factor that is a cause-in-fact of a result. *See Morgan*, 87 Wis. 2d at 735.

¶41     Knott appears to concede that none of our wrongful discharge cases have adopted or applied the substantial factor test when determining whether an employee was discharged for a reason that violates public policy. And, in our view, neither this specific test for "cause-in-fact," nor the general concept of causation, is well suited to address the pertinent inquiry in wrongful discharge claims. Such claims turn on whether the employee was discharged because of a reason that violates public policy, and that inquiry turns on the reason or reasons that motivated the employer's decision to discharge the employee. As discussed in greater detail below, the causes of a discharge are not necessarily the same thing as the employer's reasons for the decision.

¶42     Knott nevertheless argues that, without his proposed addition to the instruction or some other instruction on the substantial factor test, the instruction the circuit court did provide was incomplete and likely to mislead the jury. We disagree.

¶43 We first explain why we conclude that the court did not err in declining to provide the instruction Knott requested. In reaching this conclusion, we assume without deciding that some variation of the substantial factor test could be adapted to apply to wrongful discharge claims, such that an employee might be able to prevail by proving that the employee's refusal to violate public policy was *a substantial factor motivating the employer's decision* to terminate the employment. Even with this assumption, we conclude that Knott's proposed instruction would likely have misled the jury into applying an incorrect legal standard.

¶44 As stated, the decisive question in wrongful discharge claims is not actually the *cause* of an employee's discharge, but is instead the employer's *motivation*, or in other words its *reason or reasons for deciding* to discharge the employee. Yet, Knott's proposed instruction would have conflated these concepts. That is, Knott would have asked the jury to determine the "cause" or "causes" of Apple Wellness's decision to terminate his employment and whether the improper deduction claim was "a substantial factor in producing the decision," rather than asking the jury about the reasons that motivated Apple Wellness's decision.[9]

---

[9] As mentioned above, Knott's proposed instruction would have provided:

> So you must decide if the decision to terminate Knott was because Knott exercised his right not to have amounts deducted or withheld from his paycheck. Another way of saying this is: was Knott exercising his rights a cause of [Apple Wellness's] decision to terminate Knott? This question does not ask about "the cause" but rather "a cause" because a decision may have more than one cause. Someone's decision was "because" of something, or was caused by that something, if it was a substantial factor in producing the decision. A decision may be caused by one or more underlying factors.

(continued)

¶45     Knott's proposed instruction misstates the law as applied to the facts of his claim. As we now explain, a jury following this instruction could have determined that Knott's improper deduction claim was "a substantial factor in producing" the termination decision, even if the jury also concluded that the improper deduction claim did not motivate Apple Wellness's decision. More specifically, the jury could have found that *the sole reason* Apple Wellness terminated Knott's employment was Knott's alteration of his time clock records, and that reason does not violate public policy. However, the jury could also have found that the O'Briens would never have reviewed Knott's past time clock entries and discovered the adjustments but for Knott filing the improper deduction claim, which led to the DWD investigator's questions about his eligibility for overtime pay and his entitlement to back pay for the overtime hours that he had worked in past months. Therefore, the jury could have found that Knott's improper deduction claim was in that sense *a cause* of the discharge, even if it was not *a reason that motivated the decision*.

---

(Emphasis omitted.) Knott's proposed instruction was modeled after language from WIS JI—CIVIL 1500, which is the pattern instruction addressing the cause of an accident or injury in a negligence action. Unmodified, WIS JI—CIVIL 1500 provides:

> In answering question(s) __, you must decide whether someone's negligence caused the (accident) (injury). (This) (These) question(s) (does) (do) not ask about "the cause" but rather "a cause" because an (accident) (injury) may have more than one cause. Someone's negligence caused the (accident) (injury) if it was a substantial factor in producing the (accident) (injury). An (accident) (injury) may be caused by one person's negligence or by the combined negligence of two or more people.

(Emphasis omitted.)

¶46 Therefore, we conclude that the circuit court appropriately exercised its discretion in declining to provide Knott's proposed instruction. A court does not err when it declines to give an instruction likely to mislead the jury.

¶47 We further conclude that the court did not err in declining to otherwise instruct the jury that Knott was wrongfully discharged if Apple Wellness's decision to terminate Knott was motivated by a combination of reasons that included but was not limited to Knott's improper deduction claim. Knott relies on *Reserve Supply Co. v. Viner*, 9 Wis. 2d 530, 101 N.W.2d 663 (1960), and *Clark v. Leisure Vehicles*, 96 Wis. 2d 607, 292 N.W.2d 630 (1980), to support his argument that the jury should have been so instructed, but his reliance on these cases is misplaced.

¶48 *Reserve Supply* and *Clark* are both negligence cases, and in each case, there was evidence that multiple different causes, including the plaintiff's own negligence, contributed to the accident that caused the plaintiff's injury. *Reserve Supply Co.*, 9 Wis. 2d at 531-534; *Clark*, 96 Wis. 2d at 609-12. In *Reserve Supply*, the court instructed the jury to determine whether the defendant's negligence "caused" the accident, *Reserve Supply Co.*, 9 Wis. 2d at 533, and in *Clark*, the court asked the jury whether the defendant's negligence was "the cause" of the accident, *Clark*, 96 Wis. 2d at 612. In both cases, our supreme court determined that the instruction was likely to mislead the jury because it failed to recognize that the evidence suggested that the accident had multiple causes. *See Reserve Supply Co.*, 9 Wis. 2d at 532-33 ("It is well-settled in Wisconsin that when evidence supports a number of contributing causes the charge of the verdict should recognize that possibility and it is error to confine the causation question to a single cause." (citing *Berrafato v. Exner*, 194 Wis. 149, 158, 216 N.W. 165 (1927))); *see also Clark*, 96 Wis. 2d at 619-20.

¶49    Standing in contrast is *Spleas v. Milwaukee & Suburban Transport Corp.*, 21 Wis. 2d 635, 124 N.W.2d 593 (1963), which is instructive here.   In *Spleas*, the plaintiff fell as he was attempting to board a bus driven by the defendant. *Id.* at 637.  According to the plaintiff, the bus driver closed the door on the plaintiff's leg, catching the leg and causing the plaintiff to fall.  *Id.*  The bus driver disputed the plaintiff's account, testifying that the plaintiff never came into contact with the bus at all and had instead fallen of his own accord as he stood next to the bus.  *Id.*  Our supreme court determined that, based on the trial evidence, the jury should have been instructed to determine "the cause," rather than "a cause," of the injury.  *Id.* at 639.  It reasoned that the evidence presented two binary theories of causation—the plaintiff's version under which the bus driver's negligence was the sole cause of his injury, and the bus driver's version under which the plaintiff's own negligence caused the accident—and that neither version presented any issue of contributory negligence.  *Id.*   Accordingly, it concluded that it was error to instruct the jury that there could be more than one cause of the plaintiff's injuries.  *See id.*

¶50    This case is more similar to *Spleas* than it is to *Reserve Supply* and *Clark*.  As in *Spleas*, there were no issues of comparative fault—indeed, such issues do not arise in the context of claims of wrongful-discharge-in-violation-of-public-policy.   Nor was there evidence or argument that Apple Wellness discharged Knott based on a number of different reasons, some of which violated public policy and some that did not.  Rather, as in *Spleas*, the jury was presented with binary theories—either Apple Wellness discharged Knott because of his conduct with regard to the time clock adjustments, or alternatively, that Apple Wellness's asserted reason was pretext, and the jury could infer that Apple Wellness actually discharged Knott in retaliation for filing his claim with DWD.

Although Knott argues on appeal that Apple Wellness "alleged a number of reasons for discharging Knott, only one of which violated public policy," this contention is directly contradicted by the evidence and arguments presented at trial, including Knott's opening and closing arguments and his own trial testimony, which emphasized that the O'Briens had consistently stated that the only reason Apple Wellness discharged Knott was for falsifying his time clock records.

¶51 Therefore, even assuming that Knott could hypothetically prevail on his wrongful discharge claim by proving that his filing the improper deduction claim was a reason, rather than the sole reason, that the O'Briens were motivated to terminate his employment, the circuit court did not err in declining to so instruct the jury.

## II. Issue Preclusion

¶52 Knott contends that the circuit court erred when it declined to apply the doctrine of issue preclusion and, on that basis, instruct the jury on the purportedly preclusive effect of several determinations that DWD made when it resolved his unemployment claim. "The doctrine of issue preclusion, formerly known as collateral estoppel, is designed to limit the relitigation of issues that have been actually litigated in a previous action." *Dostal v. Strand*, 2023 WI 6, ¶22, 405 Wis. 2d 572, 984 N.W.2d 382 (citation omitted). Among other things, issue preclusion can be used "offensively" to foreclose a defendant from relitigating an

issue that the defendant unsuccessfully litigated in a prior action. *See Michelle T. v. Crozier*, 173 Wis. 2d 681, 684 & n.1, 495 N.W.2d 327 (1993).[10]

¶53 An analysis of issue preclusion proceeds in two steps. *Dostal*, 405 Wis. 2d 572, ¶23. The first step considers whether the doctrine of issue preclusion can, as a matter of law, be applied. *Id.*; *see also Aldrich v. LIRC*, 2012 WI 53, ¶¶91-92, 341 Wis. 2d 36, 814 N.W.2d 433 (analysis of the first step is a question of law and is reviewed de novo by an appellate court). If so, the court then determines whether it "comports with principles of fundamental fairness" to apply the doctrine based on the court's consideration of several non-exhaustive factors. *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶38, 300 Wis. 2d 1, 728 N.W.2d 693; *Dostal*, 405 Wis. 2d 572, ¶23.

¶54 Under the first step, we inquire "whether there is an identity of issues in the two actions," *Kenyon v. Kenyon*, 2004 WI 147, ¶11, 277 Wis. 2d 47, 690 N.W.2d 251, and whether the issue of fact or law that a party seeks to preclude from relitigation "was actually litigated and determined in the prior proceeding" and "was essential to the judgment." *Dostal*, 405 Wis. 2d 572, ¶24; *Lindas v. Cady*, 183 Wis. 2d 547, 559-60, 515 N.W.2d 458 (1994) (looking to the pleadings in both cases to determine whether an issue was "actually litigated").[11]

---

[10] Apple Wellness argues that Knott has forfeited any objection to the circuit court's decision not to instruct the jury on this issue because Knott did not request that a specific instruction be provided. We disagree. Under WIS. STAT. § 805.13(4), an objection is all that is required to preserve the claim of error for appeal; Knott raised the issue of issue preclusion on at least two occasions and then objected to the court's ultimate decision to not instruct the jury on that issue. Therefore, Knott has preserved his argument for appellate review.

[11] This stands in contrast to claim preclusion, which extends to all claims that either were or could have been asserted in the previous litigation. *Lindas v. Cady*, 183 Wis. 2d 547, 559, 515 N.W.2d 458 (1994).

¶55 Knott contends that the DWD already decided several issues in the unemployment case that should have been given preclusive effect in the jury's consideration of his wrongful-discharge-in-violation-of-public-policy case. He argues that the circuit court should have instructed the jury to give preclusive effect to DWD's legal conclusion that Knott "was not discharged for misconduct" or for "substantial fault connected with [his] employment."[12] He also argues that the court should have instructed the jury to give preclusive effect to several of DWD's evidentiary findings, which collectively amount to findings that the evidence presented at the unemployment hearing did not persuade DWD that Knott intended to "falsify" his time records or violate one of Apple Wellness's reasonable workplace rules.[13] Notably, Knott does not argue that the circuit court should have instructed the jury regarding other findings that DWD made, including its finding that Apple Wellness discharged Knott "for 'falsifying'" and "changing" his time entries "without authority," or its finding that Apple Wellness "may have been dissatisfied with [Knott's] unusual conduct" in altering the entries. Although these determinations are more directly pertinent to the issues

___

[12] Although Knott describes these determinations as factual findings, our cases describe the determinations that an employee's conduct does or does not constitute misconduct or substantial fault as legal conclusions that are informed by factual findings. *See Operton v. LIRC*, 2017 WI 46, ¶49, 375 Wis. 2d 1, 894 N.W.2d 426 (describing the determination that employee was discharged for substantial fault as a legal conclusion); *Patrick Cudahy Inc. v. LIRC*, 2006 WI App 211, ¶8, 296 Wis. 2d 751, 723 N.W.2d 756 (describing the determination that employee was discharged for misconduct as a legal conclusion that is reviewed de novo on appeal).

[13] These specific evidentiary findings included that there was "no reliable evidence" demonstrating that Knott "reported working when he was not"; that Knott "plausibly explained how he recreated his time based on activities historically recorded in [Apple Wellness's] database"; that Apple Wellness's "suggestion" that Knott's "checkout times should match the time of his last-recorded work event [was] unreasonable"; that, with regard to some of the altered time entries, Knott "did nothing more than enter checkout times that were previously absent"; that Knott "had previously been paid for the days he adjusted, and his base pay was the same each week, no matter how many hours were reported"; and that Knott had previously made "retrospective corrections to certain [time entries] with [Apple Wellness's] approval."

that are essential to this case, Knott does not argue that those determinations should have been given preclusive effect.

¶56 We conclude that there is not an "identity of issues" between the legal issues decided by DWD and the legal issues pertaining to this wrongful-discharge-in-violation-of-public-policy claim. Knott's unemployment claim turned on whether his alleged conduct constituted misconduct or substantial fault; by contrast, his wrongful discharge claim turns on whether Knott's alleged conduct was the reason Apple Wellness terminated his employment, or whether that asserted reason was pretextual.

¶57 To further expand on our conclusion, Apple Wellness's burden at the unemployment hearing was to demonstrate that Knott engaged in "misconduct" or "substantial fault." To that end, DWD required Apple Wellness to prove that Knott had falsified records because he "intended to violate the integrity" of the payroll system; that his conduct evinced "a willful, intentional, or substantial disregard of [Apple Wellness's] interests"; or that Knott violated one of Apple Wellness's "reasonable requirements" about which he had previously been warned. Apple Wellness failed to make those showings, but that is not dispositive of the separate question of whether Apple Wellness discharged Knott because of the retrospective alterations. Even if Knott's alterations did not constitute misconduct or substantial fault, there was evidence at trial from which the jury could have concluded that Apple Wellness did in fact discharge Knott for making those alterations. Therefore, there is no identity of legal issues in these two actions.

¶58 Knott nevertheless argues that there is an identity of factual issues between the two actions: DWD made several findings pertaining to the nature and

27

extent of Knott's alterations and there was testimony and argument on that topic at Knott's wrongful discharge trial. Based on DWD's findings, he asserts that DWD's factual determinations should be preclusive; that the circuit court erred in declining to instruct the jury it was bound by them; and that he was prejudiced by the court's decision not to do so because DWD's factual determinations "eliminate[ed]" Apple Wellness's asserted justification for terminating Knott's employment.

¶59 Knott's arguments do not provide a ground for reversal. Among other things, Knott cannot show prejudice. Even if a jury were instructed to accept as true DWD's factual determinations—which collectively amount to a finding that Knott did not intentionally "falsify" records, or break a rule of employment about which Knott had notice—that does not preclude the jury from finding that Apple Wellness terminated Knott because it was dissatisfied with his unusual conduct in altering his time entries after the fact. Indeed, nearly all of the evidence presented on these points at trial was consistent with DWD's findings, and the jury still found that Knott was not discharged in violation of public policy.[14]

---

[14] We note one unusual aspect of Knott's argument about the issue preclusion doctrine, and how he raised it in this case. The doctrine of issue preclusion is frequently raised in the context of a dispositive motion or a motion in limine that seeks to prevent the introduction of evidence at trial that contradicts the resolution of issues that have already been litigated. *See Lindas*, 183 Wis. 2d 547, 559-60; *Dostal v. Strand*, 2023 WI 6, ¶¶13-14, 405 Wis. 2d 572, 984 N.W.2d 382 (granting summary judgment based on issue preclusion); *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶¶19-26, 300 Wis. 2d 1, 728 N.W.2d 693 (same); *Ambrose v. Continental Ins. Co.*, 208 Wis. 2d 346, 348-49, 560 N.W.2d 309 (Ct. App. 1997) (addressing a motion in limine to preclude a litigant from "producing any evidence contradicting [a] fact that" was previously decided in an earlier case); *Michelle T. v. Crozier*, 173 Wis. 2d 681, 684-86, 495 N.W.2d 327 (1993) (addressing a motion in limine requesting that the defendant be collaterally estopped from testifying in a manner that would contradict the verdict that was rendered in a prior criminal proceeding). Here, Knott did not seek summary judgment on the basis of issue preclusion, nor did he file a motion in limine seeking to preclude the admission of any evidence

(continued)

¶60 For all these reasons, we conclude that Knott does not identify any error with the jury instructions that warrants reversal.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

that was contrary to any fact that was found by DWD. Knott cites no authority supporting the proposition that issue preclusion is available when the party seeking preclusion has not actually sought to prevent issues from being relitigated, but has instead, following the presentation of trial evidence on those issues, requested an instruction that the jury is bound by the determinations of another fact finder. However, we do not resolve Knott's argument on issue preclusion on this basis, and we instead resolve it based on the analysis in the text.